## CAREY *v.* LEONARD.

CONTRACTS—SURRENDER—ESTOPPEL—EVIDENCE.

> On a bill to restrain a continuing trespass by defendant by cutting timber under a contract of sale with a former owner of the land, evidence examined, and *held,* that complainant's claim that defendant surrendered his contract after sale of the land by complainant's vendor was not sustained, and that defendant in possession and insisting on his rights had done nothing to estop himself from asserting his rights under the contract.

Appeal from Mackinaw; Shepherd, J. Submitted June 20, 1905. (Docket No. 36.) Decided September 19, 1905.

Bill by Henry W. Carey against John D. Leonard to restrain a continuing trespass. From a decree dismissing the bill, complainant appeals. Affirmed.

*Henry Hoffman,* for complainant.

*James J. Brown* (*Holden & Holden,* of counsel), for defendant.

BLAIR, J. On or about July 10, 1902, the defendant, Leonard, together with Luther J. Hull and Jesse Bradley, formed a copartnership, known as the Hull & Leonard Manufacturing Company, for the sole purpose of manufacturing shingles and ties at Palms, in Mackinaw county, under a contract of even date with William J. Ross, whereby the said Ross sold and agreed to deliver—

"To the mill of the second party, which is to be hereafter erected by said second party upon a portion of the land of said first party upon which the timber covered by this contract is located, all the cedar timber, suitable either for ties or shingles, standing or lying on land owned and controlled by said first party, in township forty-

three north, range five west, and consisting of about five thousand acres, as claimed by said first party, for the following prices, to wit: Seventeen cents per tie for all standard railroad ties, and ninety cents per thousand for the first two grades of shingles manufactured out of said timber. Said timber to be delivered by said first party on skids at mill of said second party, or, in case vat is built at said mill, it is to be delivered in said vat."

Said Ross also agreed to lease to second parties not more than 20 acres for a mill site, and second parties agreed to erect a mill of a capacity of not less than 10,000,000 shingles per year and have the same in operation by November 1, 1902, at which time Ross agreed to commence delivering timber, and to—

"Continue to deliver timber from day to day at said mill in sufficient quantities to keep said mill in full operation until such time as the whole of said timber covered by this contract shall have been manufactured by said second party into either shingles or ties.

"It is further understood and agreed by the parties hereto that in case said first party, his grantees, heirs, or assigns, shall for any reason fail to deliver said timber at the mill of said second party as required by the terms of this agreement, then said second party may enter upon said lands, cut said timber, and haul the same to their mill, and in that event shall pay as full compensation for said timber so cut and hauled by said second party, the sum of seven cents for each and every tie.   *   *   *

"It is also further understood and agreed by the parties hereto that if said second party shall fail to carry out this agreement on its part, without any fault of said first party, by cutting at least ten million shingles per year, they will sell said mill to said first party for a reasonable compensation, and will release said first party from any liability to deliver any further timber under this agreement."

Thereafter said copartnership constructed and erected a shingle and tie mill at Palms, as provided in said contract, and the same was ready for operation in December, 1902. About November 1, 1902, Jesse Bradley sold out his interests in said copartnership to his partners, Luther J. Hull and John D. Leonard, who conducted the business there-

after.   Said Ross delivered the said timber, as provided in said contract, at said mill, from the time it commenced operations in December to January 7, 1903, when he sold all his timber and lands in township 43 north, of range 5 west, Michigan, and being the same lands and timber covered by the contract with Hull & Leonard Manufacturing Company, to Charles D. Miller, of Vassar, Mich., and thereafter said Miller stocked said mill until about the 7th of January, 1904, when he ceased to furnish any more timber to said mill.   On December 1, 1903, Charles D. Miller sold all his interests in said lands and timber to the complainant, Henry W. Carey.   On or about January 17, 1904, the mill was shut down, and Hull informed Leonard that he would have nothing more to do with the business, and soon thereafter moved away from Palms. On or about February 5, 1904, the defendant, Leonard, entered upon the lands covered by the contract and proceeded to cut the timber with which to stock the mill, having first notified Mr. Miller and Mr. Carey to furnish the timber under the contract.   Thereupon complainant, Carey, filed the bill of complaint in this suit, praying for an injunction to restrain the alleged continuing trespasses of said defendant.   A preliminary injunction was granted by the court, but upon hearing the cause in open court a decree was entered dismissing the bill.   From this decree the complainant appeals to this court.

The complainant's suit is substantially predicated upon the allegation that the Hull & Leonard Manufacturing Company, by mutual agreement or understanding with Ross and Miller, surrendered or abandoned their contract with Ross upon the sale by Ross to Miller, and that thereafter the firm was operating under a new parol arrangement with Miller.   We agree with the circuit judge that this essential element of complainant's case is not sustained by the proofs.   We are satisfied, after a careful consideration of the testimony, that the company never intended to nor did release its interest in the timber and lands under its contract, but that all it attempted to do was to re-

lease the personal liability of Mr. Ross under the contract and substitute therefor the personal liability of Mr. Miller. Mr. Miller had full notice of this contract and assumed its performance.    If the verbal agreement to assume performance of the contract, followed by actual performance for a year, was void under the statute of frauds, so also was the alleged verbal agreement on the part of the company to surrender its contract, and the verbal agreement cannot be held valid as to the surrender and invalid as to the assumption, in consideration of which the agreement to release was made.    Mr. Barker, who represented Mr. Carey in the purchase from Miller, had actual notice of the contract; the defendant Leonard was in actual possession of the mill property, insisting upon his rights; and we find nothing in the transactions disclosed by the record to estop him from asserting his rights under the contract.

The decree is affirmed, with costs to defendant.

MCALVAY, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.